## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JANICE HALL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ADVANTAGE DENTAL ORAL** | ) | |
| **HEALTH AND VISION CENTER OF** | ) | |
| **ALABAMA, P.C., REX HOWELL, and** | ) | |
| **ABBEY WARD;** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff Janice Hall ("Hall" or "Plaintiff"), and files this Complaint alleging the following facts, asserting the following causes of action, and seeking to recover the following damages.

### Jurisdiction and Venue

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

2. It has subject matter jurisdiction under 42 U.S.C. § 2000e *et seq.,* TitleVII of the 1964 Civil Rights Act ("Title VII") and 28 U.S.C. §1983 "Section 1981") and supplemental jurisdiction under 28 U.S.C. § 1367 for pendant state law claims.

3. Plaintiff has complied with all jurisdictional prerequisites for maintaining this action under Title VII. On March 22, 2022, she filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") EEOC Charge No. 420-2022-

1

00519. She received a Notice of Right-to-Sue dated February 10, 2023. This action was filed within ninety days of her receipt of the Notice.

4.      The actions complained of in his lawsuit took place in the Northern Division of the Middle District of Alabama.

**Parties**

5.      Plaintiff Janice Hall ("Ms. Hall" or "Hall" or "Plaintiff") is a black female citizen of the United States and of the State of Alabama. She is a resident of Montgomery County.

6.      Defendant Advantage Dental Oral Health and Vision Center of Alabama, P.C. ("Advantage") is a corporation incorporated and doing business in Alabama. Advantage is a successor-in-interest to Sarrell Regional Dental Center for Public Health, Inc. and will henceforth be referred to as "Sarrell" or "the company." At all times relevant, Sarrell operated the clinic where Ms. Hall worked at 3439 McGehee Road, Montgomery, AL 36111 ("the clinic").

7.      Defendant Rex Howell ("Howell") was a supervisor of Hall's when she was employed at Sarrell. Howell resides in Lee County, Alabama and does business in Montgomery County, Alabama.

8.      Defendant Abbey Ward ("Ward") was a supervisor of Hall's when she was employed at Sarrell. Ward resides in Elmore County, Alabama and does business in Montgomery County, Alabama.

**Facts**

9.      Ms. Hall began working for a dental clinic called Small Smiles in 2011, as a

dental hygienist.

10.     Small Smiles was bought out by Sarrell in 2014 while Ms. Hall was employed there.

11.     Under the new management of Sarrell, Ms. Hall and other black workers at the company began experiencing a growing amount of systemic racism.

12.     Howell, employed at Sarrell as a dentist, was one of the perpetrators of this hostile atmosphere, being consistently critical of black employees in ways that he was not regarding nonblack employees.

13.     In 2015 or 2016, Sarrell promoted Howell to be lead dentist at the clinic.

14.     In his time as a lead dentist, Howell demonstrated a record of clear favoritism of nonblack employees over black employees.

15.     One white employee named Kayla Violette called out of work two or three times a month with no consequences, but if a black employee called out the same number of times, they would receive discipline up to and including termination.

16.     On one occasion, Howell wrote Ms. Hall up for being in the kitchen during patient service hours, when several other employees were also in the kitchen and did not get written up.

17.     Ward became a staff manager at the clinic in or around 2017.

18.     Under Ward's leadership, the treatment of black employees got even worse.

19.     Howell and Ward would watch Ms. Hall intensely and intently as she worked on patients, pressuring her and waiting for her to make any kind of small mistake, which they would then seize on.

20.    On several occasions, including August 16, 2018, Howell admonished Ms. Hall for not seeing a patient despite the fact that the patient was an operative patient, not a hygiene patient, and thus not there for the services provided by Ms. Hall. Ms. Hall was the only one written up or admonished for this despite there being numerous other employees on duty at the time.

21.    On August 22, 2018, Howell admonished Ms. Hall for screening an operative patient since they were not her patient (i.e. a hygiene patient).

22.    On one occasion, Howell threatened Ms. Hall with a trip to HR for going into the kitchen to get a drink of water, while Kayla Violette was often in the kitchen doing crafts and making personal phone calls and was not disciplined.

23.    On one occasion, Howell gave Ms. Hall an unnecessary and unearned write-up in front of co-workers and patients.

24.    On September 1, 2020, Howell and Ward harangued Ms. Hall for not taking the first patient that morning when Ms. Hall was the first hygienist to arrive, when Ms. Hall had spoken to her co-worker Delisa Palmer, who had agreed to take the patient while Ms. Hall had a necessary conversation with another doctor at the clinic. A white co-worker, Victoria Shoemaker, was often the first hygienist to arrive and never got warned or disciplined for not taking the first patient.

25.    Howell also falsely accused Ms. Hall of not screening patients and of taking an inordinate amount of time to get the next patient seated in a dental chair.

26.    On May 25, 2021, Ms. Hall received a write-up for allegedly leaving incomplete notes in three patients' charts the day before, May 24. Ms. Hall had just scored

in the high nineties (out of one hundred) in a company-wide audit on all charts, and Ms. Hall did in fact complete her charts correctly on the 24th. Ms. Hall had left early on the 24th for a doctor's appointment. Howell typically signed off on the chart notes before employees left for the day. Because Ms. Hall left early on the 24th, this gave Howell the opportunity to delete or erase some of Ms. Hall's notes without her being able to find out until the next day, when it was too late for her to disprove that she had actually written up the erased notes.

27.     Ms. Hall spoke with Ed Coryell, a head doctor at Sarrell, about the above incident regarding her notes.

28.     After Ms. Hall spoke with Dr. Coryell, Howell's and Ward's harassment of her got worse.

29.     In the days following Ms. Hall's discussion with Dr. Coryell, every worker in the office received a bonus except for Ms. Hall. It was never explained why Ms. Hall did not receive this bonus, and HR said that they were "working on it" but she never did receive it.

30.     This was the only occasion where most employees received a bonus but one did not. On all other occasions during this period, all employees received bonuses if they were given out.

31.     On July 12, 2021, Ward admonished Ms. Hall for allegedly leaving a patient's chart by Ms. Hall's computer. That same day, a white employee named Amber Odom left her patient's chart in a back X-ray room unattended. Ms. Hall found it and gave it back to Odom in front of Howell, but Odom did not receive a write-up, admonishment, or any discipline.

32.     Ms. Hall did leave a patient's chart at her computer one time, but no more

than once.

33.    On July 21, 2021, Ward became highly exasperated when other employees discussed how Odom had seen a patient without verifying the patient's correct birthday in the system, which can create billing and reimbursement problems. Ward insinuated that Ms. Hall needed to go work somewhere else if she was not happy at Sarrell, and pulled Ms. Hall and Delisa Palmer into the office with Howell and accused the women of insinuating that Odom was not going to get in trouble for her mistake. Palmer received an apology but Ms. Hall did not.

34.    On July 29, 2021, Odom completed work on a child who did not have a proper parental permission form signed due to the grandparent who brought him there not being the child's legal guardian. Ms. Hall was going to work on the child's sibling but noticed the same issue and therefore did not. Odom did not receive a write-up or any discipline for this mistake.

35.    On August 24, 2021, a nonblack assistant and a white doctor performed an extraction on a child using dirty instruments. The child's parent was not informed of this mistake once it was noticed. The doctor did not get in trouble for this incident, and the assistant was only called into the office after the clinic's OSHA representative stepped in.

36.    On September 16, 2021, a white hygienist named Tere Lynn Ray worked on a patient without verifying her correct birthday or verifying her health records and was not disciplined.

37.    On November 11, 2021, Ms. Hall accidentally provided services to a minor child whose parent had not signed a permission slip. This was done because the parent

6

brought two children to the office that morning, and inadvertently signed one permission slip but not the other. Howell was on Ms. Hall's case that morning and was insistent that she continue through her patient care without completing her notes or double-checking certain items, and Ms. Hall would have caught the missing permission slip had Howell not given that directive.

38.    When the error was caught later that day, Howell and Ward found out immediately. Ms. Hall did not attempt to hide the mistake.

39.    Ms. Hall called the parent, who said that she would come back to sign the other permission form but never made it back to the office.

40.    As a hygienist, Ms. Hall was only the fourth person in line to verify the permission slips, following the front desk person, the person bringing the patient to the back, and the doctor (in this case Howell).

41.    Ms. Hall was the only person to receive any discipline for this incident.

42.    Ms. Hall was terminated from her employment with Sarrell on November 22, 2021.

43.    The reason given by Defendants for Ms. Hall's termination was the administrative error on November 11, 2021, when truly Defendants had been looking for any pretextual reason to dismiss Ms. Hall because they were not comfortable working with black people as equals in the workplace.

44.    Ms. Hall never received any unemployment following her termination from Sarrell, despite numerous attempts. She has also never received an explanation for why she has not been able to receive unemployment, and she never received an official denial letter

so was never able to appeal an actual decision.

45.    Ms. Hall was told by an employee at the unemployment office that they spoke to Ward, and that employee believed that Ward was the reason why Ms. Hall had not been able to have her unemployment approved.

## Count 1
## Title VII
## Racial Discrimination
## All Defendants

46.    Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-44 of the Complaint.

47.    Plaintiff is a black woman.

48.    Plaintiff was well qualified to perform her dental hygienist duties and had performed them admirably for years.

49.    Plaintiff was admonished and disciplined for certain actions, including some that she did not do.

50.    Various white employees of Sarrell performed these same actions or worse and yet were not disciplined.

51.    Plaintiff was terminated for a similar mistake to those made on multiple occasions by a different white employee, Odom, who was not disciplined for those mistakes at any point.

52.    Plaintiff was further discriminated against when Defendants improperly blocked her unemployment claim.

## Count 2
## 42 U.S.C. § 1981
## Racial Discrimination

8

**All Defendants**

53.    Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

54.    Plaintiff is a black woman.

55.    Plaintiff was well qualified to perform her dental hygienist duties and had performed them admirably for years.

56.    Plaintiff was admonished and disciplined for certain actions, including some that she did not do.

57.    Various white employees of Sarrell performed these same actions or worse and yet were not disciplined.

58.    Plaintiff was terminated for a similar mistake to those made on multiple occasions by a different white employee, Odom, who was not disciplined for those mistakes at any point.

59.    Plaintiff was further discriminated against when Defendants improperly blocked her unemployment claim.

60.    Plaintiff was subject to racial harassment and discrimination as described above in her employment with Sarrell, causing interference with Plaintiff's right to a work environment free from racial discrimination under her employment contract with Sarrell.

61.    The actions of Defendants harassing and discriminating against Plaintiff was taken intentionally and because of Plaintiff's race.

**Count 3**
**42 U.S.C. § 1981**
**Hostile Work Environment**
**All Defendants**

9

62.     Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

63.     Plaintiff is a black woman.

64.     The aforementioned harassment by Defendants became so significant and constant as to render Plaintiff's work environment on the job hostile and abusive.

65.     The aforementioned harassment by Defendants and Defendants' employees occurred because Plaintiff is black.

66.     The aforementioned harassment by Defendants and Defendants' employees made Plaintiff constantly look over her shoulder for the next indignity.

67.     As is predicable when someone is confronted with a constant stream of racist abuse, this harassment caused Plaintiff significant mental and emotional damage.

**Count 4**
**42 U.S.C. § 1981**
**Retaliation**
**All Defendants**

68.     Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

69.     Plaintiff engaged in protected activity by speaking with Dr. Coryell regarding the incident where Howell erased some of the notes that she took.

70.     Instead of addressing the issue after Plaintiff reported the disparate treatment, Defendants continued and worsened the abuse and discrimination as punishment for daring to speak up.

71.    Defendants took the above detrimental actions on Plaintiff's work environment in part because of Plaintiff reporting the harassment.

## Count 5
### 42 U.S.C. § 1981
### Retaliation
### All Defendants

72.    Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

73.    Plaintiff engaged in protected activity by protesting and contesting the unequal and unfair negative treatment that she received from Defendants.

74.    Defendants took steps to ensure that Plaintiff would not receive the unemployment benefits to which she was entitled.

75.    Defendants took the above detrimental actions regarding Plaintiff's unemployment in part because Plaintiff had the audacity to stand up for her rights in the workplace.

## Count 6
### Alabama Equal Pay Act
### Against Defendant Sarrell

76.    Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

77.    In 2021 every other employee at the clinic received a bonus, but Plaintiff did not.

78.    Other hygienists, including Amber Odom, Victoria Shoemaker, and Tere

Lynn Ray, performed the same work that Plaintiff did, and received the bonus that Plaintiff

did not despite the fact that Plaintiff was just as or more skilled and experienced, put forth

just as much if not more effort, had an equal or greater amount of education, and had just

as much if not more responsibility in the office.

79.    Defendant Sarrell failed to give the bonus to Plaintiff as part of its ongoing

ill-treatment and harassment based on Plaintiff's race.

## **PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request the following

relief:

a. That this Court render a judgment finding the Defendants liable for the aforementioned causes of action;

b. That is Court issue an Order requiring the Defendants to pay the Plaintiff an award of damages to compensate emotional, physical, and psychological injury; back pay, front pay, etc.;

c. An award of punitive damages;

d. That this Court issue an Order requiring the Defendants to pay for all litigation costs, expenses, and reasonable attorney's fees associated with the filing of this action pursuant to 42 U.S.C. 1988; and

e. All other relief to which Plaintiff is entitled or that the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

*/s/Richard A. Rice*
Richard A. Rice
THE RICE FIRM, LLC
115 Richard Arrington Jr. Blvd. North
Birmingham, AL 35203
Telephone 205 618-8733
rrice@rice-lawfirm.com
ASB8387I66R

ATTORNEY FOR PLAINTIFF

13

Corporation Service Company, Inc.
ATTN: Advantage Dental Oral Health and Vision Center of Alabama, P.C.
641 South Lawrence Street
Montgomery, AL 36104

Rex Howell
1067 Oden Court
Opelika, AL 36801-6186

Abbey Ward
856 Thornton Road
Titus, AL 36080-2625